IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **NSC TECHNOLOGIES, LLC**<br>500 Crawford Street, Suite 101<br>Portsmouth, VA 23704,<br><br>    **Plaintiff,**<br><br>  v.<br><br>**KADEEM DAVIS**<br>7779 Lynchburg Ct E<br>Jacksonville, FL 32277,<br><br>    **Defendant.** | Case No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff NSC Technologies, LLC ("Plaintiff"), by and through counsel, files this Complaint against Defendant Kadeem Davis ("Defendant") and states as follows:

## PARTIES

1. Plaintiff is a Virginia limited liability company maintaining its principal place of business at 500 Crawford Street, Suite 101, Portsmouth, Virginia 23704. Plaintiff operates a branch office at 2294 Mayport Road, Suite 13, Jacksonville, Florida 32233.

2. Defendant is an individual residing at 7779 Lynchburg Ct E, Jacksonville, Florida 32277, who was actively employed as a Branch Manager for Plaintiff's Jacksonville, Florida office located at 2294 Mayport Road, Suite 13, Jacksonville, Florida 32233, until July 10, 2020.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise, in part, under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*.

4. This Court also has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(a)(1) because the Parties are completely diverse in citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to its federal law claim that they form part of the same case or controversy.

6. This Court has personal jurisdiction over Defendant because Defendant has consented to jurisdiction within the Commonwealth of Virginia by way of the employment agreement entered into by Plaintiff and Defendant (the "Davis Agreement"). A true and accurate copy of the Davis Agreement is attached hereto as **EXHIBIT A**. Paragraph 4(a) of the Davis Agreement states, in relevant part:

> The Parties agree that if any legal disputes arise relating in any way to any aspect of this Agreement, and the actions contemplated hereby, any and all litigation pertaining to such dispute(s) *shall be brought in the federal and/or state courts sitting in the Commonwealth of Virginia*.

(Emphasis added.)

7. Venue is proper because the Davis Agreement contains a forum selection clause, and the Davis Agreement was executed and maintained within the present District. *Id*.

## THE FACTS

8. Plaintiff is a workforce management firm providing innovative staffing solutions for the global marine, energy, commercial, and industrial marketplace. Though Plaintiff

2

maintains headquarters in Portsmouth, Virginia, it offers services across the continental United States as well as Hawaii and Puerto Rico. Plaintiff began operations in December 2000.

9. Plaintiff has invested significant time, expense, and resources to build its business, image, and relationships with both its clients and the skilled workers placed with those clients. Plaintiff has established a valuable and substantial reputation as an industry leader in staffing solutions.

10. In or around October 2015, Plaintiff hired Defendant as a Senior Recruiter for its Jacksonville, Florida operations. In or around March 2019, Plaintiff promoted Defendant to Branch Manager. Throughout her employment with Plaintiff, Defendant was responsible for recruiting and placing skilled workers with Plaintiff's clients.

11. Throughout her tenure with Plaintiff, Defendant had access to the names and contact information of Plaintiff's skilled workers among other confidential information that is not known to the public including, but not limited to, placement pricing, client lists, and assignment history (the "Trade Secrets").

12. There is a high demand for temporary staffing in the Jacksonville, Florida geographic area and only a finite number of workers available to staff. As such, Defendant was required and expected to develop relationships with both clients and the workers staffed with those clients.

13. Plaintiff has expended significant effort and incurred substantial expense in developing and maintaining its Trade Secrets as well as its valuable relationships with both clients and the workers placed with those clients.

CO\6536366.4
I-1725545.1

14. In order to protect its legitimate business interests, Plaintiff required Defendant to execute a non-competition agreement, which Defendant voluntarily executed on October 12, 2015. *See* Ex. A.

15. The Davis Agreement states, in relevant part:

> 1. During the term of [Defendant]'s employment with the [Plaintiff] and for one (1) year following the termination of said employment for any reason (whether initiated by [Defendant] or [Plaintiff], with or without cause), [Defendant] shall not, without [Plaintiff]'s prior written consent:
>
> (a) provide, market, or sell any services, including but not limited to vendor management services, that are competitive with or of the nature or type of services: (i) that were being developed, sold, marketed, or otherwise exploited by [Defendant] during the Relevant Time Period, and (ii) which [Defendant] provided, marketed, or sold to [Plaintiff]'s customers, during Relevant Time Period; [or]
>
> (b) work or consult for, or assist, whether in a paid or unpaid capacity, any of [Plaintiff]'s competitors if (i) the services [Defendant] provides for such competitor is prohibited under section (1)(a) above or (ii) [Defendant] is employed to perform work of the nature and type of the work [Defendant] performed for [Plaintiff] during Relevant Time Period.

Per the Davis Agreement, the Relevant Time Period is defined as "the year preceding the date when [Defendant]'s employment with [Plaintiff] terminated." Ex. A.

16. The Davis Agreement goes on to state that "[i]f [Defendant]'s employment with [Plaintiff] terminates (whether initiated by [Defendant] or [Plaintiff], with or without cause), [Defendant] hereby agrees to notify [Defendant]'s new employer about [Defendant]'s rights and obligations under this Agreement prior to commencing employment with said new employer." Ex. A.

17. In or around July 2020, Defendant resigned from employment with Plaintiff, indicating she no longer wanted to work in the recruitment and staffing industry.

18. However, based upon Defendant's LinkedIn profile (the "Davis LinkedIn Profile"), Defendant began employment with Superior Skilled Trades, LLC ("SST") in July 2020 as Branch Manager in Jacksonville, Florida. A true and accurate screenshot of the Davis LinkedIn Profile is attached hereto as **EXHIBIT B**.

19. SST is also a staffing agency that places skilled workers in commercial construction and heavy industrial settings within Jacksonville, Florida and throughout the United States.

20. Plaintiff and SST are competitors.

21. Upon information and belief, Defendant is performing the same duties for SST as she did for Plaintiff, evidenced by the identical job title of Branch Manager. *See* Ex. B.

22. Accordingly, Defendant's employment with SST is a direct violation of the Davis Agreement.

23. Upon information and belief, Defendant is unlawfully utilizing Plaintiff's Trade Secrets, including its network of skilled workers, to benefit her new employer.

24. Upon information and belief, Defendant has staffed for SST several skilled workers she previously staffed while employed with Plaintiff.

25. On September 4, 2020, counsel for Plaintiff issued to SST a letter (the "Davis Letter") informing SST that it was employing Defendant in violation of her non-competition agreement. A true and accurate copy of the Davis Letter is attached hereto as **EXHIBIT C**.

26. Upon information and belief, Defendant remains employed with SST as of the filing of this Complaint.

## COUNT I
## BREACH OF CONTRACT

27. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

28. The Davis Agreement is a valid and binding agreement between Plaintiff and Defendant.

29. The Davis Agreement prohibits, among other things, Defendant's employment with a competitor within the territory prescribed in the Davis Agreement for a period of one (1) year.

30. Less than one (1) year following termination of her employment with Plaintiff, Defendant accepted and began employment with SST.

31. Upon information and belief, Defendant remains employed with SST as of the filing of this Complaint.

32. As SST is a competitor of Plaintiff, Defendant's employment with SST is a direct violation of the Davis Agreement.

33. As a consequence of the foregoing, Plaintiff has suffered irreparable harm and damages.

## COUNT II
## VIOLATION OF VIRGINIA UNIFORM TRADE SECRETS ACT

34. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

35. As a Senior Recruiter and Branch Manager for Plaintiff's Jacksonville, Florida operations, Defendant had access to Plaintiff's Trade Secrets.

36. Plaintiff has not and does not disclose its Trade Secrets to its competitors.

37. Upon information and belief, Defendant has disclosed Plaintiff's Trade Secrets to SST, a competitor of Plaintiff.

38. Upon information and belief, Defendant has used Plaintiff's Trade Secrets to the benefit of SST, a competitor of Plaintiff.

39.  Defendant's misappropriation of Plaintiff's Trade Secrets is a violation of the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336, *et seq.*

40.  As a consequence of the foregoing, Plaintiff has suffered irreparable harm and damages.

41.  Unless Defendant is temporarily, preliminarily, and permanently enjoined from her ongoing improper conduct, Plaintiff will continue to suffer irreparable harm and damages.

### COUNT III
### TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

42.  Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

43.  Plaintiff relies on its network of skilled workers to meet the staffing needs of its clients.

44.  Plaintiff routinely places—and has routinely placed—the same skilled workers with its portfolio of clients. Once an assignment ends for a skilled worker, Plaintiff works to immediately place its skilled worker for another assignment with another client. Plaintiff relies on this diligent practice to create a steady stream of revenue.

45.  Defendant is aware of Plaintiff's reliance on its network of skilled workers. Defendant is further aware that, if a competitor gained access to Plaintiff's network of skilled workers, Plaintiff's ability to meet the staffing demands of its clients would be significantly impeded.

46.  Nonetheless, upon information and belief, Defendant has provided to SST the names and contact information of the individuals within Plaintiff's network of skilled workers.

47.  As a result of Defendant's actions, Plaintiff has, on at least one occasion, been unable to place one of its skilled worker contacts with a client as that skilled worker had already been placed by Defendant with one of SST's clients.

48. As a consequence of the foregoing, Plaintiff has suffered irreparable harm and damages.

49. Unless Defendant is temporarily, preliminarily, and permanently enjoined from her ongoing improper conduct, Plaintiff will continue to suffer irreparable harm and damages.

## COUNT IV
## CIVIL CONSPIRACY

50. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

51. Defendant is aware of the prohibition of her employment with a competitor for a period of one (1) year following termination of her employment with Plaintiff. *See* Ex. A.

52. Upon information and belief, prior to hiring Defendant as its Jacksonville, Florida Branch Manager, SST was aware of the Davis Agreement, including its prohibition of Defendant's employment with a competitor for a period of one (1) year. As of at least September 4, 2020, SST is aware that its employment of Defendant is a violation of the Davis Agreement.

53. Upon information and belief, SST was aware of Defendant's unfettered access to Plaintiff's Trade Secrets during her tenure with Plaintiff.

54. Upon information and belief, SST and Defendant began negotiating employment in or around June 2020 while Defendant was still employed with Plaintiff.

55. Upon information and belief, Defendant and SST agreed to their current employment relationship for the purpose of providing SST with Plaintiff's Trade Secrets so as to misappropriate the Trade Secrets to the benefit of SST and to the detriment of Plaintiff. In other words, the purpose of Defendant's employment with SST is to rob Plaintiff of the competitive advantage it has worked tirelessly to build throughout the last twenty (20) years by using Plaintiff's Trade Secrets against it.

56. Plaintiff has, on at least one occasion, been unable to place one of its skilled worker contacts with a client as that skilled worker had already been placed by Defendant with one of SST's clients. The placement of one of Plaintiff's skilled worker contacts by Defendant and SST is just one of what will soon be many examples of dilution of Plaintiff's presence in the staffing industry.

57. As a consequence of the foregoing, Plaintiff has suffered irreparable harm and damages including, but not limited to, the loss of revenue from its inability to place one of its skilled worker contacts already placed by Defendant and SST.

58. Unless Defendant is temporarily, preliminarily, and permanently enjoined from her ongoing improper conduct, Plaintiff will continue to suffer irreparable harm and damages.

## COUNT V
## STATUTORY BUSINESS CONSPIRACY

59. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

60. Defendant was aware of the prohibition of her employment at the time she began employment with SST.

61. Upon information and belief, SST and Defendant began negotiating employment in or around June 2020 while Defendant was still employed with Plaintiff.

62. Upon information and belief, SST was aware of the Davis Agreement prior to hiring Defendant as its Jacksonville, Florida Branch Manager.

63. Upon information and belief, SST hired Defendant and Defendant agreed to work for SST for the purpose of intentionally and purposefully harming Plaintiff in its reputation, trade, business, and/or profession without legal justification. Simply put, upon information and belief, Defendant and SST entered into an employment relationship so that Defendant could use Plaintiff's Trade Secrets to the detriment of Plaintiff and to the benefit of SST.

9

64. Upon information and belief, Defendant and SST are working in concerted action to siphon skilled workers from Plaintiff's network so as to place them on behalf of SST with SST's clients.

65. As a consequence of the foregoing, Plaintiff has suffered irreparable harm and damages including, but not limited to, the loss of revenue from its inability to place at least one of its skilled worker contacts already placed by Defendant and SST with an SST client.

66. Unless Defendant is temporarily, preliminarily, and permanently enjoined from her ongoing improper conduct, Plaintiff will continue to suffer irreparable harm and damages.

## COUNT VI
## BREACH OF FIDUCIARY DUTY

67. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

68. In her capacity as Branch Manager for Plaintiff's Jacksonville, Florida office, Defendant owed Plaintiff a fiduciary duty including, but not limited to, a duty of loyalty.

69. Upon information and belief, SST and Defendant began negotiating employment in or around June 2020 while Defendant was still employed with Plaintiff.

70. Upon information and belief, Defendant previewed for SST the Trade Secrets to which she had access while employed with Plaintiff.

71. Upon information and belief, Defendant has disclosed to SST—and used to the benefit of SST—Plaintiff's Trade Secrets and other confidential business information to which Defendant became privy during her employment with Plaintiff.

72. Upon information and belief, Defendant has staffed for SST several skilled workers she previously staffed while employed with Plaintiff.

73. Upon information and belief, Defendant continues to staff for SST several skilled workers she previously staffed while employed with Plaintiff.

74. As a consequence of the foregoing, Plaintiff has suffered irreparable harm and damages.

75. Unless Defendant is temporarily, preliminarily, and permanently enjoined from her ongoing improper conduct, Plaintiff will continue to suffer irreparable harm and damages.

## COUNT VII
### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF DEFEND TRADE SECRETS ACT 2016, 18 U.S.C. § 1836, *et seq*.

76. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

77. Plaintiff owns and possesses substantial Trade Secrets that it utilizes in its business. The Trade Secrets derive independent economic value from not being generally known or readily ascertainable by those who could obtain economic value from their disclosure or use.

78. Accordingly, Plaintiff has taken reasonable efforts to maintain secrecy of the Trade Secrets including, without limitation, requiring its employees to execute confidentiality and non-disclosure agreements upon hire.

79. The Trade Secrets include, among other things, lists of skilled workers and contact information, placement pricing, client lists, and assignment history, all of which provides Plaintiff with substantial financial advantages over its competitors, including SST with whom Defendant is now employed.

80. Upon information and belief, Defendant has disclosed and used Plaintiff's Trade Secrets to the benefit of SST without Plaintiff's consent despite her knowledge that she was under a duty to not compete with Plaintiff which would include, but not be limited to, an obligation not to disclose Plaintiff's Trade Secrets to the benefit of a competitor.

81. As a consequence of the foregoing, Plaintiff has suffered irreparable harm and damages.

82. Unless Defendant is temporarily, preliminarily, and permanently enjoined from her ongoing improper conduct, Plaintiff will continue to suffer irreparable harm and damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

(a) Preliminarily and permanently enjoin Defendant from using, and/or disclosing Plaintiff's Trade Secrets and/or other confidential information;

(b) Preliminarily and permanently enjoin Defendant from continuing to breach the Davis Agreement;

(c) Preliminarily and permanently enjoin Defendant from continuing to interfere with Plaintiff's business expectancies;

(d) Award compensatory damages in favor of Plaintiff and against Defendant in an amount to be proven at trial;

(e) Award pre-judgment interest in favor of Plaintiff and against Defendant;

(f) Award Plaintiff attorneys' fees and costs incurred in this action as are recoverable at law;

(g) Award punitive and exemplary damages against Defendant in an amount to exceed $75,000.00; and

(h) Any other relief this Court deems just and proper.

CO\6536366.4
I-1725545.1

Respectfully submitted,

**NSC TECHNOLOGIES, LLC**

*/s/  Christopher A. Abel*

Christopher A. Abel (VSB No. 31821)
Jeanne E. Noonan (VSB No. 87863)
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone:	757.628.5500
Facsimile:	757.628.5566
cabel@wilsav.com
jnoonan@wilsav.com

*Pro hac vice* to be filed:

Paul L. Bittner (Ohio Bar Number 0061674)
Abigail J. Barr (Ohio Bar Number 0092679)
ICE MILLER, LLP
250 West Street
Columbus, Ohio 43215
Telephone:	614.462.2700
Facsimile:	614.462.5135
Paul.Bittner@icemiller.com
Abigail.Barr@icemiller.com

*Counsel for Plaintiff NSC Technologies, LLC*

13